*NEW-YORK
Jan.. 1823.*

*The People
vs.
Jonas Bush.*

---

## The People *vs.* Jonas Bush. *Assault and Battery and False Imprisonment.*

WILSON, counsel for the defendant moved the court to put off the trial until the witnesses, on the part of the defendant, could be brought in ; they having been subpœnaed, and had not appeared.

*Maxwell, District Attorney,* objected : he observed that the cause had been put down for this day, by the consent and agreement of the counsel for the defendant, and that if the defendant had witnesses absent, they might be brought in by the time the witnesses for the people would have given their testimony, by attachment.

*Wilson,* counsel for the prisoner, contended that the witnesses had been subpœnaed and had not obeyed it ; that it would be oppressive to order on the trial in their absence.

*By the Court.*—" If the witnesses have been subpœnaed " and the process returned, let an attachment issue against " them : the court will not order the trial on until time has " been given for the issuing, execution, and return of the " attachment."

*A watchman has no right to arrest a female whom he suspects to be a woman of ill-fame, between 10 and 11 o'clock at night, merely for coming up to him and calling him 'cousin:' but he may arrest on a suspicion of felony, or actual breach of the peace.
\*Where it appears a subpœna on the part of the defendant has been issued and served, and has not been obeyed, the court will*

NEW-YORK,
Jan. 1823.

The People
*vs.*
Jonas Bush.

not order on the trial until an attachment has been issued, executed, and returned.

This was an indictment against Jonas Bush, a captain of the city watch, for assault and battery upon Ann Baxter, on the 10th day of December, 1822, between 10 and 11 o'clock in the evening.

The facts of the case appeared as follows : Miss Baxter was walking along the street on the collect a few minutes after 10 o'clock. She came up to Mr Bush and called him " cousin," and repeated the expression two or three times to him. He took hold of her arm and called Mr. M'Kinney, a watchman, and ordered him to take care of the prisoner. Mr. M'Kinney took her to the watch-house, where she was confined, and next morning discharged.

Process was issued against Bush, and bail entered for his appearance at the sessions, to answer for an assault and battery.

*Wilson* proved, upon the cross-examination of M'Kinney and other witnesses, that Bush took hold of the prosecutor in a mild and gentle manner, that he used no harsh expression to her. He also offered to show that she was a woman of bad character, and known to be such : that she was, but a moment before, seen by Mr. Bush coming out of a house of ill-fame : that she had separated herself from her husband, and was notoriously a bad woman.

*Maxwell* objected to the introduction of such testimony, and contended that no officer had a right to arrest and detain the person of a citizen, however bad his character might be, who was guilty of no crime : that the liberty of the citizen was too precious to be violated with impunity by the power of any officer.

The court overruled the evidence. They observed that it would not alter the case whether the prosecutor was a woman of good or bad character : that she had a legal

right to walk the streets unmolested—provided she committed no breach of the peace, and gave no good ground to suspect her of felony : that the person of a citizen was sacred : they could not be arrested and thrown into prison at the whim or caprice of the watch or any other authority : that in this case it did not appear that any offence at all was committed ; the prosecutor came up to the defendant and called him " cousin :" this certainly cannot be an offence to merit an imprisonment : besides, it appears by the evidence, that she really mistook the defendant for her cousin.

NEW-YORK,
Jan. 1823.

*Note.—Watchmen, by the common law, have authority to arrest, and detain in prison for examination, all persons walking the street at night, whom there is a reasonable ground to suspect guilty of felony, although there may be no proof of a felony having been committed. Chit. vol. 1. p. 20. 2 Hale, 96.

But at common law, no peace-officer is justified in taking up a nightwalker, unless he has committed some disorderly or suspicious act. 2 Ld. Raymond, 1301.

See also Bac. ab. Trespass, D. 2 Hale, 96—98. 3 Taun. 14. Burns, J. Watch. 1 East. P. C. 303. 2 Inst. 52. City Hall Rec. vol. 1. p. 39.

See Williamson's case, City Hall Rec. vol. 4. p. 57.

See also a. leading case. 11 John. Rep. 486.

